NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250730-U

NO. 4-25-0730

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 21, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ALEXANDER DAVID LAFAVE, | ) | No. 23CF931 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Presiding Justice Steigmann and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed the trial court's sentencing of defendant to eight years in the Illinois Department of Corrections, finding it was not an abuse of discretion.

¶ 2        On January 29, 2024, defendant Alexander David Lafave, pled guilty to delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2022)). Defendant was sentenced to an agreed 30 months of probation, fines, and a substance abuse evaluation. On September 6, 2024, the State filed a petition to revoke probation. The trial court found the petition proven by a preponderance of the evidence and sentenced defendant to eight years in the Illinois Department of Corrections (DOC).

¶ 3        Defendant appeals, arguing the trial court abused its discretion because the sentence did not reflect an adequate consideration of his criminal background or childhood experiences and because it was inconsistent with his "demonstrated willingness to be a

productive member of his family and society." We disagree and affirm.

¶ 4                                    I. BACKGROUND

¶ 5            On January 29, 2024, defendant, at the age of 18, pled guilty to delivery of a
controlled substance (720 ILCS 570/401(c)(2) (West 2022)), a Class 1 felony carrying a
minimum period of incarceration in DOC of 4 years and a maximum of 15 years. See 730 ILCS
5/5-4.5-30 (West 2024). The State alleged that if the case were to proceed to trial, the State
would present evidence that an undercover Illinois State Police investigator made contact with
defendant on Snapchat and defendant sold the investigator over one gram of a substance
confirmed to be cocaine for $120. In exchange for the plea agreement, two other charges against
defendant were dismissed. Defendant was sentenced to an agreed-upon 30 months of probation,
fines, and a substance abuse evaluation.

¶ 6            On September 6, 2024, the State filed a petition to revoke defendant's probation.
The petition alleged defendant repeatedly failed to report to probation as directed and failed to
supply proof of his place of residence and employment to the probation officer. Defendant was
present at the arraignment for the petition on November 18, 2024, and was admonished by the
trial court of the potential penalties he was facing and that it was important that he be present at
the hearing on the matter. Defendant stated he understood the range of penalties and the
importance of his presence. A hearing was set for January 28, 2025.

¶ 7            On January 28, 2025, a hearing on the petition commenced without defendant
present. Nick Hospelhorn testified he was the probation officer assigned to defendant's case.
Hospelhorn stated that after defendant did not appear for a visit in early March 2024, he spoke
with defendant and scheduled a meeting at a later date that month, and defendant again failed to
appear for that meeting. The court found the petition proven by a preponderance of the evidence

- 2 -

and set the case for sentencing on April 25, 2025.

¶ 8        A presentence investigation report was filed April 21, 2025. It revealed defendant was the subject of three juvenile adjudications, including unlawful use of a weapon and possession of a controlled substance, all within two years of the commission of this offense. In November 2023, five months following the events leading to the conviction in this case, defendant was additionally charged and later convicted of possession of a controlled substance and sentenced to an additional 30 months of probation. He also had four pending misdemeanor and traffic violations. The report detailed defendant's education and family history. Defendant did not complete school past grade nine. It noted multiple incidents involving child protective services, including incidents which involved defendant's mother acting violently against him. It stated that defendant had reported being taken to the hospital in September 2024 after an "overdose." Defendant's probation officer also received a call from defendant's mother in November 2024, stating that defendant had overdosed multiple times and she believed he was using "Percocet and possibly fentanyl." It was also alleged that defendant failed to report to probation as directed for at least five months from March 2024 to August 2024 in this case and failed to report from September 2024 to December 2024 in the case for the November 2023 drug possession offense.

¶ 9        At the sentencing hearing, the State acknowledged defendant's difficult upbringing and struggles with substance abuse but argued he demonstrated no interest in changing his way of life. The State recommended a sentence of nine years in DOC.

¶ 10        Defense counsel argued that defendant's brain was not yet fully developed and stressed his difficult upbringing. She argued that defendant's education was minimal and he did not grow up in a safe environment, with allegations that the children in the home were not having

their needs met and defendant was exposed to domestic violence from a young age. Defendant also entered child protective services at 15 or 16 years old, as his childhood environment was one where children had access to weapons, the mother was often absent for long periods, and there were indications of emotional and psychological abuse. Counsel stressed defendant's use of cannabis from age 12, alcohol from age 14, and Xanax from age 15, with at least one overdose in his life. She stated a 2020 psychological test showed results of persistent depressive disorder, adjustment disorder, stress-related disorders, and autism spectrum disorder. Defense counsel stated defendant was ready to face his issues. She also stated the underlying offense was not violent, and defendant had no prior crimes of violence. Defense counsel requested placement on high-risk probation and, as a condition of probation, that he obtain a GED and undergo substance abuse treatment.

¶ 11 Defendant then provided a statement in allocution. He stated he was tired of being in court. He stated he had been running away from his emotions and problems that caused him to act out. He stated he had a strong support system from his father and his father's girlfriend and now had a "real home," which he had never had before.

¶ 12 The trial court acknowledged defendant's difficult upbringing as a failure of parenting and "the system." The court stated probation was the preferred sentence, but it had "zero confidence that [defendant would] successfully complete a period of probation." The court believed a sentence in DOC was "necessary for the protection of the public and for the protection of [defendant]." The court sentenced defendant to eight years in DOC, with credit for six days previously served in custody, to be served at 50%. It also recommended placement in a substance abuse program.

¶ 13 On April 29, 2025, defendant submitted a motion for a new petition to revoke the

hearing, or in the alternative, to reconsider his sentence. He argued, in light of the evidence, the sentence imposed was excessive, greatly at variance with the spirit and purpose of the law, and manifestly disproportionate to the nature of the offense.

¶ 14 A hearing on defendant's motion was held on July 10, 2025. Defense counsel argued the trial court "did not give adequate attention or weight to the mitigation that was presented." Counsel again stressed defendant's difficult upbringing and early exposure to illicit substances. She argued he had been respectful in court and had members of the community there in support. She concluded that the sentence was excessive in light of the offense because it was nonviolent and there were significant mitigating factors.

¶ 15 The trial court stated that, in sentencing, it reviewed the presentence investigation report and considered all the evidence presented. It stated it had considered all the factors in aggravation and mitigation. The court denied the motion.

¶ 16 This appeal followed.

¶ 17 II. ANALYSIS

¶ 18 Defendant asks that we "remand this matter for a new sentencing hearing with instructions to reduce the sentence, or in the alternative, reduce [defendant's] sentence to the minimum or a near-minimum term." He argues the sentence did not reflect an adequate consideration of his criminal background or childhood experiences and was inconsistent with his "demonstrated willingness to be a productive member of his family and society."

¶ 19 Article I, section 11 of the Illinois Constitution provides that all penalties must be determined "both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The sentencing court must balance factors both in mitigation and aggravation. See 730 ILCS 5/5-4-1(a)(4) (West 2024); see

*id.* § 5/5-5-3.1 (listing factors in mitigation); *id.* § 5/5-5-3.2 (listing factors in aggravation).

¶ 20　　　　The reviewing court has the power to reduce the punishment of the trial court. Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967). When reviewing a sentence, however, this court will not replace the judgment of the sentencing court with its own. The Illinois Supreme Court has "firmly established that the imposition of a sentence is a matter of judicial discretion and that, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review." *People v. Perruquet*, 68 Ill. 2d 149, 153 (1977). "A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A sentence is deemed an abuse of discretion where the sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 21　　　　Defendant argues that "[w]here the sentence imposed does not reflect adequate consideration of the defendant's criminal background, a reduction is warranted." Most of the cases defendant cites are distinguishable or do not reflect defendant's assertion. Almost all the cases cited by defendant involve DOC sentences of 40 years or more, whereas the current case involves a sentence of just 8 years, a drastically smaller penalty. See *People v. Bigham*, 226 Ill. App. 3d 1041, 1049 (1992); see also *People v. Brown*, 243 Ill. App. 3d 170, 176 (1993); *People v. Maldonado*, 240 Ill. App. 3d 470, 484-85 (1992); *People v. Bedony*, 173 Ill. App. 3d 613, 621-22 (1988).

¶ 22　　　　For example, in *Bigham*, the court vacated and remanded the defendant's sentence because the defendant had rehabilitative potential which could not be well served by a sentence

of 60 years' imprisonment for first degree murder. *Bigham*, 226 Ill. App. 3d at 1049. The Fifth District noted the defendant's only prior conviction was nine years prior and nonviolent in nature. *Id.* In this case, not only did defendant receive a much shorter sentence, there were also factors undermining defendant's potential for rehabilitation. He continually violated the terms of his probation, had a criminal history of adjudications involving weapons and drugs, was convicted of another drug-related felony after this offense, and did not provide verification of obtaining a substance abuse evaluation as a condition of his probation as of the time of his sentencing. The record shows the trial court considered defendant's potential for rehabilitation. It had no confidence that defendant would successfully complete a period of probation and was, in part, sentencing defendant to DOC for his own protection. We find no abuse of discretion.

¶ 23       Defendant also cites *People v. Anderson*, 142 Ill. App. 3d 240, 243 (1985), in which the First District found that an extended term of 17 years' imprisonment for residential burglary for the defendants was excessive. The First District found that the discretionary utilization of the extended term statute was unwarranted because the defendants were 17 years old at the time of the offense and lacked a significant criminal history. *Id.* This again is distinguishable from the present case because defendant here had a criminal history, had a shorter sentence in DOC, and was an adult at the time of the offense. Moreover, his sentence was not an extended term but was within the standard sentencing range.

¶ 24       Defendant also emphasizes his difficult upbringing. He cites *People v. Williams*, 62 Ill. App. 3d 966, 975-76 (1978), where the First District reduced a sentence of 40 to 140 years in DOC for armed robbery and attempted murder because the defendant was 19 years old at the time of the offense and had no prior convictions. The court noted,

"[I]n this case, a young man, 21 years old, without any previous convictions, a

victim of a broken home who has undergone treatment for mental problems so serious that he had contemplated suicide, a father of a young child, has been given a sentence that cannot possibly result in restoring him to any measure of useful citizenship." *Id.*

This is clearly distinguishable from the present case because the sentence in this case is capable of restoring defendant to useful citizenship. Indeed, the record reflects that restoring defendant was a consideration of the trial court. The court stated,

"I'm convinced that if you follow through and you take these next several years that you're going to be in [DOC] and use it productively, get clean off of drugs, try to get some treatment which I've checked *** that when you're released you can pick up where you left off and build on it."

Absent aggravating circumstances, defendant would be in his mid-twenties at the time of his release, still a young adult. In contrast, the defendant in *Williams* would have been in prison for the entirety of his twenties and thirties and at a severe disadvantage in becoming a useful citizen compared to this defendant.

¶ 25　　　　Defendant also argues the sentence above the statutory minimum was "inconsistent with his demonstrated willingness to be a productive member of his family and society." Again, we are unpersuaded. As stated above, the trial court sufficiently considered defendant's rehabilitative potential in determining his sentence. Defendant cites *People v. Kosanovich*, 69 Ill. App. 3d 748 (1979), but this case is clearly distinguishable. In *Kosanovich*, the First District found that the imposition of a minimum term of 10 years in DOC for armed robbery constituted an abuse of the trial court's discretion. *Id.* at 751-52. The court found "no factors contraindicative to the defendant's potential for drug rehabilitation." *Id.* at 752. The court

concluded, "Considering the defendant's relatively young age, her need for health care, her potential for rehabilitation, and the circumstances surrounding this offense, we believe that the imposition of the higher minimum sentence of 10 years serves no useful purpose to society." *Id.* In contrast, in the instant case, the court found factors counter to defendant's potential for rehabilitation, and as stated, it sentenced him to DOC, in part, for this reason.

¶ 26  Defendant also suggests the sentence was manifestly disproportionate to the underlying offense because it was for just over one gram of cocaine, the lowest amount chargeable under the statute. See 720 ILCS 570/401(c)(2) (West 2022). This disregards his criminal history, a statutory factor in aggravation. See 730 ILCS 5/5-5-3.2(a)(3) (West 2024). Defendant cites no authority directly supporting that his sentence was disproportionate or greatly at variance with the spirit and purpose of the law. We therefore find neither contention holds.

¶ 27  Here, as in *Perruquet*, defendant does not argue "the trial judge considered improper factors in imposing sentence or that he was unconcerned with the rehabilitative potential of the defendant. To the contrary, the record reveals that the trial judge was fully aware of the defendant's past record, his family situation, and his personal traits." *Perruquet*, 68 Ill. 2d at 155. The record here shows that the trial court considered the relevant factors in aggravation and mitigation. The court acknowledged defendant's challenging upbringing but recognized that a difficult upbringing is not an excuse for criminal behavior and that it can create conditions where a defendant is likely to reoffend. We do not believe the trial court abused its discretion in providing this sentence. The sentence was not greatly at variance with the spirit and purpose of the law, nor was it manifestly disproportionate to the nature of the offense. Therefore, we will not alter the decision of the trial court.

¶ 28         III. CONCLUSION

¶ 29     For the reasons stated, we affirm the trial court's judgment.

¶ 30     Affirmed.